1  KEITH D. CABLE (SBN 170055)
   CABLE LAW OFFICES
2  101 Parkshore Drive, Suite 100
   Folsom, CA 95630
3  Telephone: (916) 608-7995
4  Facsimile: (916) 984-5775

5  DANIEL L. LEYTON (Florida Bar No. 0061824)
   CHARLES D. FERGUSON (Florida Bar No.
6  0741531)
   DE LA O, MARKO, MAGOLNICK & LEYTON
7  3001 S. W. 3rd Avenue
8  Miami, FL 33129
   Telephone: (305) 285-2000
9  Facsimile: (305) 285-5555

10 Attorneys for Plaintiffs
11 EDWARD L. KEMPER
   CONNIE J. ARNOLD
12
   DOWNEY BRAND LLP
13 RHONDA CATE CANBY (Bar No. 171571)
   ELIZABETH B. STALLARD (Bar No. 221445)
14 621 Capitol Mall, Eighteenth Floor
   Sacramento, CA  95814
15 Telephone: (916) 444-1000
   Facsimile: (916) 444-2100
16
   Attorneys for Defendant
17 CATHOLIC HEALTHCARE WEST

18                    UNITED STATES DISTRICT COURT

19                    EASTERN DISTRICT OF CALIFORNIA

20

| | |
|---|---|
| 21 EDWARD L. KEMPER and CONNIE J. ARNOLD, for themselves and all others<br>22 similarly situated,<br>23            Plaintiffs,<br>24 v.<br>25 CATHOLIC HEALTHCARE WEST, a California corporation, et. al.<br>26            Defendants. | Case No.  2:06-CV-00295-LKK-EFB<br><br>**CLASS SETTLEMENT AGREEMENT AND CONSENT DECREE** |

27
28

1<br>CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

Edward L. Kemper and Connie J. Arnold (the "Named Plaintiffs"), acting on behalf of a nationwide class of disabled persons (the "Class"), as defined in the Court's October 2, 2006, Order Granting Class Certification (the "Certification Order"), and Defendant, Catholic Healthcare West ("CHW"), hereby enter into the following Settlement Agreement and Consent Decree (the "Consent Decree").

**RECITALS**

On May 19, 2006, the Named Plaintiffs – both of whom have disabilities as defined by 42 U.S.C. § 12102(2) – filed a proposed class action captioned *Edward L. Kemper and Connie J. Arnold, for themselves and all others similarly situated v. Catholic Healthcare West*, United States District Court for the Eastern District of California, Sacramento Division, Case No. 2:06-CV-00295-LKK-PAN (JFM), alleging inaccessible architectural barriers at CHW hospital campuses. CHW owns and/or operates more than forty (40) hospitals and other health care facilities in Arizona, California, and Nevada, including, e.g., acute care hospitals, outpatient care facilities, freestanding surgery and diagnostic centers, behavioral health hospitals, clinics, medical office buildings, and long term care and skilled nursing facilities.

On October 2, 2006, the Court entered the Certification Order, certifying the Class as follows:

> All people in the United States with disabilities as that term has been defined by 42 U.S.C. §12102(2) - including those persons that have a physical mobility impairment that substantially limits a major life function - who have and who were, prior to the filing of the Class Action Complaint through the pendency of this action, denied the full and equal enjoyment of the goods, services, programs, facilities, privileges, advantages, or accommodations of any of CHW's Facilities, because of their respective disabilities.

The Certification Order also certified counsel for the Named Plaintiffs as counsel for the Class ("Class Counsel"). The Named Plaintiffs and the Class are collectively referred to herein as "Plaintiffs." CHW and CHW Affiliates are collectively referred to herein as the "CHW Group." The CHW Group and Plaintiffs are collectively referred to herein as the "Parties," and individually herein as a "Party."

The CHW Group denies any and all liability to Plaintiffs. Specifically, the CHW Group denies that it has violated any laws – federal, state or local – regarding access to its Facilities or

2
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

discrimination against disabled persons.  Nevertheless, the Parties want to resolve their differences by:

    (a)    achieving improvements to access at the Facilities in a manner that satisfies CHW Group obligations under the laws governing physical access for persons with disabilities as defined by applicable Disability Laws;

    (b)    addressing access issues at the Facilities in a broad-based, uniform manner, so that CHW Group obligations will be clearly and cohesively defined, and thereby avoiding the risks associated with piecemeal actions against individual Facilities. Piecemeal litigation produces uneven and unsatisfactory results for Plaintiffs and creates the risk that the CHW Group would be subject to conflicting standards regarding compliance with Disability Laws at its Facilities; and

    (c)    avoiding the uncertainty and cost of further or future litigation for the Parties.

NOW THEREFORE, the Parties have agreed to the following terms:

## **GENERAL PROVISIONS**

1. **Definitions.**  In addition to the terms defined elsewhere in this Consent Decree, the following terms shall have the meanings set forth below.  Any terms not defined herein shall have the meaning ascribed to them in the ADA and in its implementing regulations.

    1.1.    "ADA" means the Americans With Disabilities Act, as contained in 42 U.S.C. Section 12101, *et seq.*, and its implementing regulations.

    1.2.    "CHW Affiliates" are entities wholly or partially owned or controlled by CHW, that have become bound by this Consent Decree in accordance with paragraph 16.2.

    1.3.    "Class Members" means members of the Class.

    1.4.    "Consent Decree" means this document, including any attached exhibits as of the date of its approval or attached in the future in accordance with paragraph 16.1.

    1.5.    "Disability Laws" means:  (1) the ADA; (2) Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*; (3) the California Disabled Persons Act, Cal. Civ. Code §§ 54 *et seq.*; (4) any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing; (5) any state or local

PDF created with pdfFactory trial version www.pdffactory.com

law, statute, administrative rule, regulatory or code provision that either directly incorporates Title III of the ADA or any of its implementing regulations, or sets forth standards or requirements that are equivalent to Title III of the ADA or any of its implementing regulations; and (6) any other federal, state, local, or administrative statute, rule, or regulation relating to access for the disabled or prohibiting public accommodations from discriminating on the basis of disability.

1.6. "Expert" or "Experts" means persons designated by either Plaintiffs or CHW, pursuant to this Consent Decree, in connection with the formulation of, and compliance with, Facility Modification Plans. All Experts shall have the qualifications identified in paragraph 13.5 below.

1.7. "Facility" or "Facilities" means public accommodations owned and/or operated by the CHW Group which are identified in Exhibit A to this Consent Decree or in supplements to Exhibit A. A Facility includes all areas open to and available for use by the public, including, but not limited to, the parking spaces and sidewalks that serve these areas, so long as the CHW Group has a legal right of alteration or control over these areas. In the case of an acute care hospital, Facility includes all buildings related to the hospital's function, or otherwise located contiguous with or adjacent to the hospital, sharing parking lots or garages or other common areas; such groups of buildings and common areas may be referred to herein as a "Hospital Facility Campus."

1.8. "Facility Consent Decree" means a judgment approved by the Court regarding a Facility Modification Plan.

1.9. "Facility Modification Plan" means a plan developed by the Parties identifying the barriers to be removed and/or other modifications to be made pursuant to Disability Laws for a Facility.

1.10. "Facility Site Inspections" are initial inspections to identify potential barriers, and the needed barrier removal or other modifications necessary to make a Facility compliant with Disability Laws.

4
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

1.11. "Fairness Hearing" means a Court hearing during which a Facility Consent Decree is evaluated by the Court and any objections to a proposed Facility Consent Decree are heard by the Court. If the Court is satisfied that the Facility Consent Decree is fair to Plaintiffs, the Court shall approve the Facility Consent Decree in accordance with the procedures set forth in paragraphs 14.4 and 14.5 below.

1.12. "Fees and Costs" means the attorneys' fees, experts' fees and recoverable costs reasonably incurred by Plaintiffs in this action, including fees and costs incurred in the administration of this Consent Decree.

1.13. "Medical Equipment" means equipment that assists in providing disabled patients access to diagnostic and treatment services (including examination tables, examination chairs, and lifts), scales, and patient beds.

1.14. "Noncompliance" means that more than five percent (5%) of all applicable line items identified in an approved Facility Consent Decree have not been completed adequately, after applying all acceptable dimensional tolerances, construction tolerances, acceptable variations, and equivalent facilitations cited in the Facility Consent Decree.

1.15. "Post Compliance Inspection" means a survey conducted by Plaintiffs, through their Expert(s), to determine whether Noncompliance exists at a Settlement Corrected Facility.

1.16. A "Settlement Corrected Facility" is a Facility that has completed barrier removal or other modifications pursuant to an approved Facility Consent Decree.

1.17. A "Settlement Corrected Facility Order" is a Court order determining that the CHW Group's obligations with respect to a Settlement Corrected Facility have been fulfilled, in accordance with the procedures described in paragraph 19.

2. **Conditions.** This Consent Decree is effective only upon approval by the Court in accordance with Fed. R. Civ. P. 23(e).

3. **Nonadmission/Nondetermination.**

3.1. This document constitutes a settlement agreement pursuant to Federal Rule of Evidence 408. Entering into this Consent Decree or any Facility Consent Decree (as

5
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

defined in paragraph 1.8) does not constitute an admission by the CHW Group, express or implied, that the CHW Group has in any way violated any Disability Laws. This Consent Decree, or any Facility Consent Decree, does not contain, and will not be interpreted or construed as containing, any such admission.

 3.2. The Court has made no findings concerning the alleged violations of any Disability Laws. Accordingly, this Consent Decree, or any Facility Consent Decree, does not constitute, and will not be used in this or any other case or action, as evidence of any such violation of any Disability Laws. If for any reason this Consent Decree is not executed, no evidence of this proposed Consent Decree will be admissible for any purpose in this or any other action.

4. **No Third Party Beneficiaries/Plaintiffs' Right to Enforce.** For purposes of interpreting or enforcing this Consent Decree, any Facility Consent Decree, or any Settlement Corrected Facility Order, individual Class Members shall not be deemed to be third-party beneficiaries. Individual unnamed Class Members may not bring any action for any alleged violation of this Consent Decree, any Facility Consent Decree, or any Settlement Corrected Facility Order. Only the Named Plaintiffs and Class Counsel have the authority to bring an action to enforce this Consent Decree, any Facility Consent Decree, or any Settlement Corrected Facility Order.

5. **Facility Consent Decrees Incorporating Facility Modification Plans.**

 5.1. This Consent Decree contemplates, and sets forth procedures to achieve the disposition of Plaintiffs' claims for injunctive relief against each Facility via approval of individual Facility Consent Decrees by the Court as to each Facility. The process by which Facility Consent Decrees will be approved is described in greater detail in paragraphs 14.4 and 14.5.

 5.2. The Court shall retain continuing jurisdiction of this action for the following purposes:

  (a) to resolve disputes as to the formation of a Facility Modification Plan for a given Facility;

PDF created with pdfFactory trial version www.pdffactory.com

(b) to consider and approve each Facility Consent Decree;

(c) to issue each Settlement Corrected Facility Order; and

(d) to supervise and, to the extent necessary, enforce the Parties' compliance with this Consent Decree, each Facility Consent Decree, and each Settlement Corrected Facility Order.

5.3. Each Facility Consent Decree and each Settlement Corrected Facility Order shall constitute a final judgment within the meaning of Fed. R. Civ. P. 54(b), and will be independently subject to all rights of judicial review provided by law for judgments of this Court, without awaiting the conclusion of this action as to other Facilities.

6. **Exclusivity of this Consent Decree.** Plaintiffs, either individually or collectively, may not now, or at any time in the future, maintain any legal action contending that a Facility that has been addressed, or will be addressed, by this Consent Decree is required, under the legal theories asserted in this action, to make additional or different modifications beyond those agreed to pursuant to this Consent Decree or a Facility Consent Decree.

7. **Term.** This Consent Decree shall have a term ("Term") that expires when the Court's jurisdiction terminates as to the last of the Facilities.

8. **Entire Consent Decree.** This Consent Decree constitutes the complete understanding between the Parties, may not be changed orally, and supersedes any and all prior agreements or understandings between the Parties. Each Party acknowledges that no other Party, nor any representative of a Party, has made any representations or promises other than as set forth herein. No other promises, agreements, or modifications to this Consent Decree shall be binding unless in writing and signed by all Parties. The Parties further agree that if any term of this Consent Decree is held to be void, voidable, unlawful or unenforceable, the remaining portion of the Consent Decree shall remain in full force and effect.

## INJUNCTIVE RELIEF

9. **Procedures For Communicating Concerns.**

9.1. Within ninety (90) days of the approval of this Consent Decree, CHW will implement a policy for communicating complaints or concerns respecting access for

PDF created with pdfFactory trial version www.pdffactory.com

disabled persons to a Facility, and for Facility management and personnel to follow in reviewing the complaint or concern, in a form agreed to by CHW and Plaintiffs, through Class Counsel. Any disagreements between the Parties regarding the policy will be handled in accordance with the process outlined in paragraph 20.

9.2. When the policy referred to in paragraph 9.1 is implemented, CHW will simultaneously post a notice of the policy in a conspicuous and otherwise appropriate location frequented by patients and invitees of each Facility.

**10. Medical Equipment Review**

10.1 Within **ninety (90) days** of approval of this Consent Decree, CHW will provide Plaintiffs' counsel with a proposed questionnaire (hereinafter, the "Medical Equipment Questionnaire") detailing the information CHW will seek from each Facility regarding its Medical Equipment. The Medical Equipment Questionnaire will be used to evaluate the adequacy of the Medical Equipment onsite, policies for obtaining Medical Equipment not currently onsite, and training and policies regarding the use of Medical Equipment and providing access to treatment for persons with disabilities. Plaintiffs will be given an opportunity to comment on the Medical Equipment Questionnaire, and CHW will address any comments in good faith, with the end result being a final Medical Equipment Questionnaire.

10.2 Thereafter, and contemporaneous with the Facility Site Inspection at a given Facility, CHW will use the Medical Equipment Questionnaire to engage in a review of the Medical Equipment at that Facility and prepare a report on its findings. This report (hereinafter, the "Medical Equipment Report") will identify the status of the items addressed in the Medical Equipment Questionnaire at the Facility, as well as proposed actions to be taken at the Facility to address any issues raised in the Medical Equipment Report.

10.3 When CHW first responds to the Facility Modification Plan created by Plaintiffs' Expert(s) for a given Facility or CHW Affiliate (as described in Paragraph 14.1), CHW will provide the Medical Equipment Report for that Facility. Following Class Counsel's

8
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

opportunity to review and comment on the Medical Equipment Report, the Parties will stipulate that the Medical Equipment Report resolves all issues concerning Medical Equipment at the Facility, subject to Paragraph 20 herein.

10.4 Any Facility surveyed prior to the finalization of the Medical Equipment Questionnaire will have its review of Medical Equipment performed within twelve (12) months of the finalization of the Medical Equipment Questionnaire. Such Facility's or CHW Affiliate's Medical Equipment Report will be finalized within twenty four (24) months of the finalization of the Medical Equipment Questionnaire.

11. **Limited Discovery Prior to Facility Site Inspections.**

11.1. Plaintiffs will conduct limited written discovery to determine the current status of each of the Facilities as it relates to compliance with Disability Laws. This discovery is limited to that set forth in the pre survey questionnaire ("PSQ") attached as Exhibit B to this Consent Decree.

11.2. CHW will provide responses to the PSQ regarding each Facility no less than fifteen (15) days prior to the Facility Site Inspection for the Facility.

11.3. Any disagreements between the Parties regarding the PSQ will be handled in accordance with the process outlined in paragraph 20.

12. **Other Discovery.** This Consent Decree, and specifically paragraph 11.1, is designed to provide orderly, expeditious and efficient discovery in connection with the Facility Site Inspections and the development and fulfillment of Facility Modification Plans without undue burden on the Parties or the Court. A Party may seek permission of the Court for additional discovery with respect to a Facility on a showing of extraordinary need, by clear and convincing evidence that (a) any such requested discovery is directly relevant to a Facility Site Inspection and/or the formulation of a Facility Modification Plan; (b) the information sought will not be made available via the informal discovery contemplated in paragraph 11.1; and (c) a Party has refused to voluntarily respond. Any and all additional discovery shall be subject to the standards of this Consent Decree, the Federal Rules of Civil Procedure and the Local Rules of this Court. Requests for additional discovery will be

9
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

handled in accordance with the process outlined in paragraph 20.

13. **Facility Site Inspection Schedule and Protocol.**

    13.1. The Parties have already participated in multiple Facility Site Inspections and are in the process of finalizing Facility Modification Plans for those surveyed Facilities. The Parties will finalize any Facility Modification Plans begun prior to the approval of this Consent Decree in accordance with the procedures outlined in this Consent Decree.

    13.2. During the pendency of this Consent Decree, CHW will provide Class Counsel with a schedule of Facility Site Inspections to take place in the following calendar year at least one (1) month prior to the start of that calendar year. This process will repeat itself annually until all Facility Site Inspections are completed.

    13.3. The Parties will negotiate in good faith to determine a schedule for Facility Site Inspections that will be reasonably calculated to provide for seven (7) to nine (9) inspections each calendar year, and to provide for completion of Facility Site Inspections within six (6) years of the date of the approval of this Consent Decree.

    13.4. The schedule described in paragraph 13.2 may be revised from time to time as appropriate. Circumstances justifying a revision in the schedule include, but are not limited to: the need to comply with applicable building codes and applicable local, state, and federal laws and regulations (including amendments or other changes thereto); changes in medical science or technology; developments in patient care or related services; the operational needs of the Facilities; the timing of existing or projected construction and alteration schedules for the Facilities unrelated to the Facility Modification Plan; and the professional schedules of all counsel and Experts.

    13.5. **Selection of Experts.** All Experts will have substantial professional experience in architecture and engineering disciplines, as well as experience applied to hospitals and other health care facilities and in facility access requirements pursuant to Title III of the ADA.

    13.6. **Facility Site Inspections.** The Parties will cooperate in good faith regarding the inspection of each Facility by an Expert or Experts with a view toward providing

PDF created with pdfFactory trial version www.pdffactory.com

reasonable advance notice of such inspection, arranging for a mutually convenient time for such inspection, making available to Plaintiffs relevant information in advance concerning the Facility to be inspected, and conforming to the schedule for inspections described in paragraph 13.2.

13.7. At CHW's discretion, one or more of CHW's Experts, defense counsel and/or Facility personnel shall accompany Plaintiffs' Expert and Class Counsel throughout any Facility Site Inspection.

14. **Facility Modification Plans and Facility Consent Decrees.**

14.1. Within forty-five (45) days following a Facility Site Inspection, Plaintiffs' Expert(s) will deliver to CHW a proposed Facility Modification Plan specifying with particularity any and all alleged barriers, the manner in which Plaintiffs contend barriers should be removed and other action Plaintiffs contend shall be taken pursuant to Disability Laws as to the Facility.

14.2. Facility Modification Plans will be sensitive to, and attempt to account for: the need to comply with applicable building codes and applicable local, state, and federal laws and regulations (including amendments or other changes thereto); changes in medical science or technology; developments in patient care or related services; the operational needs of the Facilities; the timing of existing or projected construction and alteration schedules for the Facilities unrelated to the Facility Modification Plan; and other changed circumstances materially affecting the Facility Modification Plan or its underlying assumptions. Facility Modification Plans will also take into account the dimensional tolerances agreed to by the Parties. These agreed-upon tolerances are detailed in a separate stipulation.

14.3. Within ninety (90) days of receipt of a Facility Modification Plan, CHW will review the proposed Facility Modification Plan and provide a written response to it, including any objections. The Parties will thereafter negotiate in good faith to reach agreement regarding a final Facility Modification Plan. If the Parties cannot agree on the

PDF created with pdfFactory trial version www.pdffactory.com

terms of a final Facility Modification Plan within six (6) months thereafter, they will submit the disputed issues to the ADR process outlined in paragraph 20.

14.4. All final Facility Modification Plans, whether reached by agreement of the Parties or by determination pursuant to the procedures outlined in paragraph 20, will then be submitted to the Court as proposed Facility Consent Decrees. In the interest of efficiency, proposed Facility Consent Decrees will be submitted to the Court in groups rather than individually. These submissions will be made on a regular basis by the Parties as needed, and in any event, at least once per calendar year.

14.5. Each Facility Consent Decree will be effective only upon the occurrence of the following events:

(a) Approval by the Court in accordance with Fed. R. Civ. P. 23(e); and

(b) Entry of judgment in accordance with the terms of this Consent Decree and the Facility Consent Decree at issue.

14.6. The deadlines set forth in this section can be extended by agreement of the Parties. If agreement cannot be reached, the Party seeking the extension can request it from the Court in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

15. **Barrier Removal and Other Modifications**.

15.1. CHW will make good faith efforts, including, but not limited to, meeting and conferring with Class Counsel as necessary, to have all remediation and changes completed at a Facility within three (3) years of the date the Court approves the Facility Consent Decree for that Facility, subject to a stipulated or court-approved extension.

15.2. The Parties acknowledge that such good faith efforts will be sensitive to, and attempt to account for: the need to comply with applicable building codes and applicable local, state, and federal laws and regulations (including amendments or other changes thereto); changes in medical science or technology; developments in patient care or related services; the operational needs of the Facilities; the timing of existing or projected construction and alteration schedules for the Facilities unrelated to the Facility

12
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

Modification Plan; or other changed circumstances materially affecting the Facility Consent Decree or its underlying assumptions.

15.3. A Party may, at any time, propose amendments to a Facility Consent Decree if, in the view of the Party proposing the amendment, an amendment is necessary or appropriate to accommodate changes or developments identified in paragraph 15.2, or to further the objectives of the Facility Consent Decree. Unresolved differences concerning such proposals for resolution may be submitted to ADR as set forth in paragraph 20. Any recommended resolution of differences obtained pursuant to the process set forth in paragraph 20 may also be appealed by any Party to the Court pursuant to the process set forth in paragraph 20. Amendments to a Facility Consent Decree shall be submitted to the Court for hearing and, if appropriate, approval in keeping with the process employed for approval of Facility Consent Decrees.

16. **Amendment of Pleadings; Status Reports; Final Hearings.**

16.1. CHW may at any time submit a supplement to Exhibit A to this Consent Decree, thereby adding additional Facilities to the procedures provided for in this Consent Decree. The Parties agree to stipulate to CHW's supplements to Exhibit A for this purpose, and such stipulation shall be filed with the supplemental Exhibit A in support of CHW's request for the Court's approval. The Parties also agree to stipulate to Plaintiffs amending the operative Complaint annually in accordance with any changed information provided in a supplemental Exhibit A, and such stipulation shall be filed with the amended Complaint in support of Plaintiffs' motion for leave to amend. Any Facility identified in a supplemental Exhibit A is entitled to the same protections as though it were identified in Exhibit A at the time this Consent Decree is approved.

16.2. CHW Affiliates may become subject to this Consent Decree by furnishing a written agreement to be included and bound by this Consent Decree. CHW Affiliates that furnish this agreement to CHW will be promptly identified in a supplement to Exhibit A and will be subject to all provisions of this Consent Decree, unless expressly indicated otherwise in this Consent Decree or the exhibits hereto.

PDF created with pdfFactory trial version www.pdffactory.com

16.3. The Parties will file an annual Joint Status Report to keep the Court informed as to the Parties' progress under this Consent Decree. The first Joint Status Report will be filed on or before March 23, 2010..

17. **Post Compliance Inspections.**

17.1. Plaintiffs' Expert(s) shall conduct Post Compliance Inspections of all Settlement Corrected Facilities.

17.2. CHW will notify Class Counsel in writing within ninety (90) days after a Facility becomes a Settlement Corrected Facility. Following this notification, the Parties will cooperate to arrange for a Post Compliance Inspection of the Settlement Corrected Facility on reasonable notice and at a mutually convenient time. **Each Post Compliance Inspection will be scheduled so that inspections will occur within ninety (90) days of CHW's notice.**

18. **Procedures for Addressing Alleged Noncompliance in Post Compliance Inspections.**

18.1. Within sixty (60) days of conducting any Post Compliance Inspection, Class Counsel will notify CHW in writing if Plaintiffs assert Noncompliance with the corresponding Facility Consent Decree. The written notice shall identify with particularity the basis for any alleged Noncompliance. If no written Notice of Noncompliance is received by CHW within 90 days after a Post Compliance Inspection is completed, CHW's modifications will be deemed accepted by Class Counsel so that CHW may seek court approval of the inspected facility under section paragraph 19.1 below.

18.2. Within sixty (60) days of receipt of the written notice described in paragraph 18.1, CHW will respond in writing to Class Counsel. The Parties will then meet and confer over any alleged noncompliance within forty-five (45) days after Class Counsel receives CHW's response.

PDF created with pdfFactory trial version www.pdffactory.com

18.3. Within thirty (30) days after the meeting described in paragraph 18.2, any remaining unresolved differences as to a Facility will be referred to the Court or, if the Parties so agree, resolved by ADR as set forth in paragraph 20.

18.4. The Court or a Special Master is entitled to provide appropriate relief upon a showing of Noncompliance as to a Facility Consent Decree. Relief may include, but is not limited to, enforcement of the Facility Consent Decree, and extension of this Consent Decree for such period as may be necessary to remedy Noncompliance.

18.5. Any Party may petition the Court for relief from the provisions of this Consent Decree or of a Facility Consent Decree upon a showing of supervening obligations or events that are unforeseeable or beyond the control of the Parties, including, but not limited to: changes in state or local building codes or ordinances; other legal or administrative requirements; problems in the financial credit or bond financing markets or the occurrence of natural disasters that may prevent timely compliance with the injunctive relief provisions set forth herein.

19. **Final Hearings Regarding Settlement Corrected Facilities**.

**19.1.** Once a Facility becomes a Settlement Corrected Facility, and: (1) after any disputes over alleged Noncompliance as to the Settlement Corrected Facility are resolved as described in section 18 above; or (2) sixty (60) days after Class Counsel has waived a Post-Compliance Inspection or (3) ninety (90) days after the Facility's Post Compliance Inspection is deemed accepted because Class Counsel has not provided the written notice described in paragraph 18.1 above, CHW may seek, via motion, a Settlement Corrected Facility Order finding that CHW's obligations with respect to the Settlement Corrected Facility have been fulfilled and that CHW has complied with the applicable Facility Consent Decree**.**

19.2. Within fifteen (15) days of CHW filing the motion described in paragraph 19.1, Plaintiffs may request an evidentiary hearing on CHW's motion. It is in the Court's discretion to grant or deny the request.

PDF created with pdfFactory trial version www.pdffactory.com

19.3. If the Court finds, as to the Facility at issue, that CHW's obligations with respect to the Settlement Corrected Facility have been fulfilled and that CHW has complied with the applicable Facility Consent Decree, the Court will enter a Settlement Corrected Facility Order to that effect with regard to the Facility.

20. **Alternative Dispute Resolution; Special Masters.**

20.1. The Parties want to resolve any disputes that may arise concerning the administration of this Consent Decree expeditiously and without undue expense, and hereby agree to the alternative dispute resolution procedures set forth in this section (hereinafter, "the ADR"). This Consent Decree will be supervised by the Court or, to the extent this Consent Decree provides, and the Parties subsequently agree, by a Special Master.

20.2. The first time the Parties agree to submit a dispute to a special master, the Parties shall meet and confer to select three or more persons to jointly nominate to serve as potential special masters. They shall advise the Court of their nominations, accompanied by resumes identifying qualifications of the nominees.

20.3. The Court, in its discretion, shall then appoint one or more of the Parties' nominees who, on acceptance of the appointment, shall serve as special masters in this action (hereinafter, the "Special Masters").

20.4. Thereafter, either of the Parties may request in writing that one of the Special Masters resolve a dispute in accordance with this Consent Decree. The parties shall direct this written request directly to the designated Special Master.

20.5. Each party will cooperate in submitting disputes to the Special Master, but if the subject is something that can't be resolved by a special master, then the Parties can submit the dispute to the Magistrate Judge. Fee disputes, for example, will be submitted to the Magistrate Judge.

20.6. Any Party may request an evidentiary hearing on a disputed matter under this section. It is in the discretion of the Court, Magistrate Judge, or Special Master to grant or deny the request.

PDF created with pdfFactory trial version www.pdffactory.com

20.7. Rulings by Special Masters may be appealed by any Party to the Court. Rulings by Magistrate Judges may be challenged in the manner set forth in the Federal Rules of Civil Procedure and Local Rules of this Court.

20.8. Nothing in this Consent Decree constitutes a waiver of any otherwise available right of judicial review.

21. **Stay of Similar Disputes Pending Resolution**.

21.1. In the interest of judicial economy and to reduce the risk of inconsistent determinations concerning disputed issues, the Parties agree that once a particular dispute as to a particular Facility has been submitted for resolution in the manner set forth in paragraph 20, all disputes over the same or a substantially similar issue that have arisen or may arise in connection with other Facilities will be stayed to the extent necessary or appropriate to avoid prejudice to any Party and to avoid needless expenditures and unnecessary litigation.

21.2. Notwithstanding the foregoing, the Parties agree to use their best efforts to:

(a) proceed in good faith with their obligations under this Consent Decree to the greatest extent possible while a disputed issue is being resolved; and

(b) expedite resolution of all disputed issues by every method available in accordance with this Consent Decree.

**RELEASES OF CLAIMS FOR INJUNCTIVE RELIEF AND COVENANT NOT TO SUE**

22. **Release.** As of the date this Consent Decree is approved, and in consideration for the relief provided herein, the sufficiency of which is expressly acknowledged, Plaintiffs, and each of their heirs, executors, administrators, successors, assigns, administrators, agents and representatives (collectively, the "Injunctive Releasing Parties"), unconditionally release, acquit and forever absolutely discharge the CHW Group, as well as its principals, successors and assigns, including, without limitation, board members, corporate members, officers, employees and agents of CHW, from the Released Injunctive Claims.

23. "Released Injunctive Claims" are any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, certain or speculative,

17
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com

asserted or unasserted, accrued or unaccrued, for injunctive, declaratory or other non-monetary relief, however described, based on the conduct preceding final approval of this Consent Decree that were brought, could have been brought, or could be brought now or in the future relating in any way to the accessibility of Facilities to Plaintiffs in accordance with Disability Laws.

24. The "Released Injunctive Claims" also include all claims, rights, demands, charges, complaints, actions, suits and causes of action for injunctive, declaratory or other non-monetary relief, however described, based on conduct that occurs after final approval of this Consent Decree and during the Term of this Agreement to the extent that they arise out of or relate to actions, omissions or conduct (including physical conditions at Facilities) that are within the contemplated scope and terms of this Consent Decree.

25. **Covenant Not To Sue.** As of the date this Consent Decree is approved, and in consideration for the relief provided herein, the sufficiency of which is expressly acknowledged, the Injunctive Releasing Parties covenant and agree never to file or institute against CHW or any member of the CHW Group any claim, right, demand, charge, complaint, suit, cause of action, action or proceeding of any kind whatsoever, whether at law, in equity or otherwise, in or before any court, administrative agency, arbitral panel or other tribunal wherever situated, asserting, directly or indirectly, any Released Injunctive Claim.

26. **California Civil Code Section 1542.** The Injunctive Releasing Parties hereby knowingly and willingly waive any and all rights and benefits afforded by the provisions of Section 1542 of the California Civil Code or any analogous state or federal law or regulation, to the extent it would apply to this Consent Decree. Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

PDF created with pdfFactory trial version www.pdffactory.com

**BINDING EFFECT; NO NOTICE**

27. Once the Court approves this Consent Decree or any individual Facility Consent Decree, or enters any Settlement Corrected Facility Order, the Consent Decree, Facility Consent Decree, or Settlement Corrected Facility Order is a final decree binding the Parties.

28. Any final decree referenced in paragraph 27 is a final judgment pursuant to Fed. R. Civ. P. 54, subject to all rights of judicial review provided by law for judgments of this Court.

29. In accordance with Fed. R. Civ. P. 23(b)(2), because the Complaint seeks injunctive relief only, and in keeping with the Court's order dated October 6, 2008, no individual notice to the Class will be required prior to approval of this Consent Decree.

**ATTORNEYS' FEES, EXPERT FEES AND LITIGATION EXPENSES/COSTS**

30. Upon Court approval of this Consent Decree, Plaintiffs will be the prevailing parties for purposes of determining entitlement to attorneys' fees and costs under Title III of the ADA, 42 U.S.C. § 12205.

31. CHW will pay Plaintiffs' reasonable Fees and Costs, which will be paid according to the terms set forth below:

   31.1. **Up To The Time This Consent Decree is Approved.** The Court approves the payment of $524.995.71 to Class Counsel for all Fees and Costs through the approval of this Consent Decree, which shall be paid by CHW to Plaintiffs within forty-five (45) days of approval of this Consent Decree.

   31.2. **After This Consent Decree is Approved.** All Fees and Costs incurred by Class Counsel and Plaintiffs' Experts shall be paid as set forth in the Fee and Cost Stipulation Agreement, attached hereto as Exhibit C.

   31.3. If a Party believes that another Party has vexatiously litigated any matter in this case, the allegedly aggrieved Party may petition this Court to modify any fee award, or otherwise sanction any Party found to have engaged in such vexatious conduct.

PDF created with pdfFactory trial version www.pdffactory.com

DATED: March 26, 2009	DE LA O, MARKO, MAGOLNICK & LEYTON

By: /s/David Marko
DAVID MARKO
Attorneys for Named Plaintiffs and the Class

DATED: March 26, 2009	DOWNEY BRAND LLP

By:/s/Rhonda C. Canby
RHONDA C. CANBY
Attorneys for Defendant
CATHOLIC HEALTHCARE WEST

**IT IS SO ORDERED.**

DATED: April 21, 2009

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

20
CONSENT DECREE

PDF created with pdfFactory trial version www.pdffactory.com