CABLE LAW OFFICES
KEITH D. CABLE (Bar No. 170055)
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Telephone: (916) 608-7995
Facsimile: (916) 984-5775

DE LA O, MARKO, MAGOLNICK & LEYTON
DANIEL L. LEYTON (FL Bar No. 0061824)
CHARLES D. FERGUSON (FL Bar No. 0741531)
3001 S. W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-2000
Facsimile: (305) 285-5555

Attorneys for Plaintiffs
EDWARD L. KEMPER
CONNIE J. ARNOLD

DOWNEY BRAND LLP
DANIEL J. MCVEIGH (Bar No. 77410)
ELIZABETH B. STALLARD (Bar No. 221445)
621 Capitol Mall, Eighteenth Floor
Sacramento, CA  95814
Telephone: (916) 444-1000
Facsimile: (916) 444-2100

Attorneys for Defendant
CATHOLIC HEALTHCARE WEST

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD L. KEMPER and CONNIE J. ARNOLD, for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CATHOLIC HEALTHCARE WEST, a California corporation, et. al.<br><br>Defendants. | Case No.  2:06-CV-00295-LKK-EFB<br><br>**FACILITY CONSENT DECREE – NORTHRIDGE HOSPITAL MEDICAL CENTER**<br><br>Date:           April 25, 2011<br>Time:          10:00 a.m.<br>Court Room:     4<br><br>**Before The Honorable Lawrence K. Karlton** |

///

1

Edward L. Kemper and Connie J. Arnold (the "Named Plaintiffs"), acting on behalf of a nationwide class of disabled persons (the "Class"), as defined in the Court's October 2, 2006, Order Granting Class Certification (the "Certification Order"), and Defendant, Catholic Healthcare West ("CHW"), hereby enter into the following Facility Consent Decree (the "Facility Consent Decree") as to Northridge Hospital Medical Center.

## **RECITALS**

On May 19, 2006, the Named Plaintiffs – both of whom have disabilities as defined by 42 U.S.C. § 12102(2) – filed a proposed class action captioned *Edward L. Kemper and Connie J. Arnold, for themselves and all others similarly situated v. Catholic Healthcare West*, United States District Court for the Eastern District of California, Sacramento Division, Case No. 2:06-CV-00295-LKK-PAN (JFM), alleging inaccessible architectural barriers at CHW hospital campuses. CHW owns and/or operates more than forty (40) hospitals and other health care facilities in Arizona, California, and Nevada, including, e.g., acute care hospitals, outpatient care facilities, freestanding surgery and diagnostic centers, behavioral health hospitals, clinics, medical office buildings, and long term care and skilled nursing facilities.

On October 2, 2006, the Court entered the Certification Order, certifying the Class as follows:

> All people in the United States with disabilities as that term has been defined by 42 U.S.C. §12102(2) - including those persons that have a physical mobility impairment that substantially limits a major life function - who have and who were, prior to the filing of the Class Action Complaint through the pendency of this action, denied the full and equal enjoyment of the goods, services, programs, facilities, privileges, advantages, or accommodations of any of CHW's Facilities, because of their respective disabilities.

The Certification Order also certified counsel for the Named Plaintiffs as counsel for the Class ("Class Counsel"). The Named Plaintiffs and the Class are collectively referred to herein as "Plaintiffs." CHW and CHW Affiliates are collectively referred to herein as the "CHW Group." The CHW Group and Plaintiffs are collectively referred to herein as the "Parties," and individually herein as a "Party."

On or about March 17. 2009, the Court approved the Class Settlement Agreement and Consent Decree ("Consent Decree") entered into by the Parties.

On or about October 15, 2009, the Court approved the Stipulation Regarding Agreed Upon Tolerances and Procedures ("Tolerance Stipulation") entered into by the Parties.

In accordance with Sections 13 and 14 of the Consent Decree, the Parties conducted a Facility Site Inspection of the Northridge Hospital Medical Center facility in order to evaluate physical, communication, and operational accommodations for persons with disabilities. This Facility Consent Decree incorporates the Facility Modification Plan created as a result of that Facility Site Inspection.

The Parties now, therefore, in accordance with paragraph 14.4 of the Consent Decree, and in consideration of the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, agree to the following terms and conditions as full and complete settlement of the action as to Northridge Hospital Medical Center.

## **GENERAL PROVISIONS**

1. **Definitions.** In addition to the terms defined elsewhere in this Consent Decree, the following terms shall have the meanings set forth below. Any terms not defined herein shall have the meaning ascribed to them in the ADA and in its implementing regulations.

    1.1. "ADA" means the Americans With Disabilities Act, as contained in 42 U.S.C. Section 12101, *et seq.*, and its implementing regulations.

    1.2. "Class Members" means members of the Class.

    1.3. "Consent Decree" means the Class Settlement Agreement and Consent Decree, approved by the Court on or about March 17, 2009, including any attached exhibits as of the date of its approval or attached in the future in accordance with paragraph 16.1.

    1.4. "Disability Laws" means: (1) the ADA; (2) Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*; (3) the California Disabled Persons Act, Cal. Civ. Code §§ 54 *et seq.*; (4) any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing; (5) any state or local law, statute, administrative rule, regulatory or code provision that either directly incorporates Title III of the ADA or any of its implementing regulations, or sets forth

standards or requirements that are equivalent to Title III of the ADA or any of its implementing regulations; and (6) any other federal, state, local, or administrative statute, rule, or regulation relating to access for the disabled or prohibiting public accommodations from discriminating on the basis of disability.

1.5. "Facility" or "Facilities" means public accommodations owned and/or operated by the CHW Group which are identified in Exhibit A to the Consent Decree or in supplements to Exhibit A. A Facility includes all areas open to and available for use by the public, including, but not limited to, the parking spaces and sidewalks that serve these areas, so long as the CHW Group has a legal right of alteration or control over these areas. In the case of an acute care hospital, Facility includes all buildings related to the hospital's function, or otherwise located contiguous with or adjacent to the hospital, sharing parking lots or garages or other common areas; such groups of buildings and common areas may be referred to as a "Hospital Facility Campus."

1.6. "Facility Consent Decree" means a judgment approved by the Court regarding a Facility Modification Plan.

1.7. "Facility Modification Plan" means a plan developed by the Parties identifying the barriers to be removed and/or other modifications to be made pursuant to Disability Laws for a Facility.

1.8. "Facility Site Inspection" is an initial inspection to identify potential barriers, and the needed barrier removal or other modifications necessary to make a Facility compliant with Disability Laws.

1.9. "Medical Equipment" means equipment that assists in providing disabled patients access to diagnostic and treatment services (including examination tables, examination chairs, and lifts), scales, and patient beds.

1.10. "Noncompliance" means that more than five percent (5%) of all applicable line items identified in an approved Facility Consent Decree have not been completed adequately, after applying all acceptable dimensional tolerances, construction tolerances, acceptable variations, and equivalent facilitations cited in the Facility Consent Decree.

1.11.   "Post Compliance Inspection" means a survey conducted by Plaintiffs, through their Expert(s), to determine whether Noncompliance exists at a Settlement Corrected Facility.

1.12.   A "Settlement Corrected Facility" is a Facility that has completed barrier removal or other modifications pursuant to an approved Facility Consent Decree.

1.13.   A "Settlement Corrected Facility Order" is a Court order determining that the CHW Group's obligations with respect to a Settlement Corrected Facility have been fulfilled, in accordance with the procedures described in paragraph 19 of the Consent Decree.

2. **Facilities Subject to Agreement.**  CHW owns and/or operates the following property, which is a Facility in this litigation covered by the Consent Decree:

   (1) Northridge Hospital Medical Center, 18300 Roscoe Blvd., Northridge, CA 91328.
   (2) Pavilion Plaza, 18420 Roscoe Blvd., Northridge, CA 91328.
   (3) Weight Loss Center, 18400 Roscoe Blvd., Suite A, Northridge, CA 91328.
   (4) Gamma Knife Center, 18350 Roscoe Blvd., Suite 100, Northridge, CA 91328.
   (5) IFL Building, 18300 Roscoe Blvd., Northridge, CA 91328.
   (6) Carole Plump Women's Center, 18300 Roscoe Blvd., Northridge, CA 91328.
   (7) Children's Center, 18460 Cantara St., Reseda, California, 91335.
   (8) Renaissance Imaging Center, 18436 Roscoe Blvd., Northridge, CA 91328.
   (9) Northridge Family Practice Center, 18406 Roscoe Blvd., Northridge, CA 91328.

3. **Conditions.**

   3.1   This Facility Consent Decree is effective only upon approval by the Court in accordance with Fed. R. Civ. P. 23(e) and entry of judgment in accordance with the terms of the Consent Decree and this Facility Consent Decree.

   3.2   This Facility Consent Decree incorporates a Facility Modification Plan respecting the Plaintiffs and Northridge Hospital Medical Center, attached hereto as Exhibit A.  Subject to the terms and conditions of the Consent Decree and this Facility Consent Decree, CHW will cause the physical, communications and operational

alterations and modifications described in the Facility Modification Plan to be made, with respect to the Facility commonly known as Northridge Hospital Medical Center, in order to bring about the removal of physical and other barriers and thus allows disabled persons the full enjoyment of the goods and services provided by Northridge Hospital Medical Center.

4. **Nonadmission/Nondetermination.**

   4.1. This document constitutes a settlement agreement pursuant to Federal Rule of Evidence 408. Entering into this Facility Consent Decree does not constitute an admission by the CHW Group, express or implied, that the CHW Group has in any way violated any Disability Laws. This Facility Consent Decree, does not contain, and will not be interpreted or construed as containing, any such admission.

   4.2. The Court has made no findings concerning the alleged violations of any Disability Laws. Accordingly, this Facility Consent Decree does not constitute, and will not be used in this or any other case or action, as evidence of any such violation of any Disability Laws. If for any reason this Facility Consent Decree is not executed, no evidence of this proposed Facility Consent Decree will be admissible for any purpose in this or any other action.

5. **No Third Party Beneficiaries/Plaintiffs' Right to Enforce.** For purposes of interpreting or enforcing this Facility Consent Decree, individual Class Members shall not be deemed to be third-party beneficiaries. Individual unnamed Class Members may not bring any action for any alleged violation of this Facility Consent Decree. Only the Named Plaintiffs and Class Counsel have the authority to bring an action to enforce this Facility Consent Decree.

6. **Exclusivity of this Facility Consent Decree.**

   6.1 Plaintiffs, either individually or collectively, may not now, or at any time in the future, maintain any legal action contending that the Facility addressed by this Facility Consent Decree is required, under the legal theories asserted in this action, to make additional or different modifications beyond those agreed to pursuant to this Facility Consent Decree.

6.2     If any conflicts exist or are perceived between the Consent Decree, this Facility Consent Decree, and the Facility Modification Plan incorporated herein, the Facility Modification Plan will govern only with regard to the physical, communications and operational modifications and alterations to be implemented by CHW respecting Northridge Hospital Medical Center.  For all other such conflicts between the Consent Decree, this Facility Consent Decree, and the Facility Modification Plan incorporated herein, the Consent Decree will govern the Facility Consent Decree, and both in conjunction (as so construed) will govern the Facility Modification Plan.

7. **Term.**  This Facility Consent Decree shall have a term ("Term") that expires when the Court enters a Settlement Corrected Facility Order with regard to the Facility addressed herein.

8. **Entire Facility Consent Decree.**  This Facility Consent Decree, including the Facility Modification Plan incorporated within it, constitutes the complete understanding between the Parties as to this Facility, may not be changed orally, and supersedes any and all prior agreements or understandings between the Parties as to this Facility.  Each Party acknowledges that no other Party, nor any representative of a Party, has made any representations or promises other than as set forth herein.  No other promises, agreements, or modifications to this Facility Consent Decree shall be binding unless in writing and signed by all Parties.  The Parties further agree that if any term of this Facility Consent Decree is held to be void, voidable, unlawful or unenforceable, the remaining portion of the Facility Consent Decree shall remain in full force and effect.

**INJUNCTIVE RELIEF**

9. **Medical Equipment Review.**  In accordance with Paragraph 10.4 of the Consent Decree, Northridge Hospital Medical Center's Medical Equipment Report will be finalized within twenty four (24) months of the finalization of the Medical Equipment Questionnaire, and filed with the Court.

10. **Auxiliary Aids and Services and Service Animal Policies**.  CHW will ensure that appropriate policies regarding Auxiliary Aids and Services and regarding Service Animals are implemented at the Northridge Hospital Medical Center Facility.  CHW's current

Auxiliary Aids and Services policies have been in place since 2008 and are filed with the Office of Civil Rights. These policies have been provided to Class Counsel for review and approval. CHW is in the process of developing a system-wide Service Animals Policy, which will also be provided to Class Counsel for review and approval. CHW's Auxiliary Aids and Services and Service Animals policies will be filed with the Court within 180 days of the approval of this Facility Consent Decree.

11. **Barrier Removal and Other Modifications**.

    11.1.    CHW will make good faith efforts, including, but not limited to, meeting and conferring with Class Counsel as necessary, to have all remediation and changes completed at this Facility within three (3) years of the date the Court approves this Facility Consent Decree, subject to a stipulated or court-approved extension.

    11.2.    The Parties acknowledge that such good faith efforts will be sensitive to, and attempt to account for: the need to comply with applicable building codes and applicable local, state, and federal laws and regulations (including amendments or other changes thereto); changes in medical science or technology; developments in patient care or related services; the operational needs of this Facility; the timing of existing or projected construction and alteration schedules for this Facility unrelated to the Facility Modification Plan; or other changed circumstances materially affecting this Facility Consent Decree or its underlying assumptions.

    11.3.    A Party may, at any time, propose amendments to this Facility Consent Decree if, in the view of the Party proposing the amendment, an amendment is necessary or appropriate to accommodate changes or developments (as identified in paragraph 15.2 of the Consent Decree), or to further the objectives of this Facility Consent Decree. Unresolved differences concerning such proposals for resolution may be submitted to ADR as set forth in paragraph 20 of the Consent Decree. Any recommended resolution of differences obtained pursuant to the process set forth in paragraph 20 of the Consent Decree may also be appealed by any Party to the Court pursuant to the process set forth in paragraph 20 of the Consent Decree. Amendments to this Facility Consent Decree

shall be submitted to the Court for hearing and, if appropriate, approval in keeping with the process employed for approval of Facility Consent Decrees.

12. **Post Compliance Inspection.**  In accordance with the Consent Decree, CHW will notify Class Counsel in writing within ninety (90) days after this Facility becomes a Settlement Corrected Facility.  Following this notification, the Parties will cooperate to arrange for a Post Compliance Inspection of this Settlement Corrected Facility on reasonable notice and at a mutually convenient time. The Post Compliance Inspection will be scheduled so that the inspection will occur within ninety (90) days of CHW's notice.

13. **Procedures for Addressing Alleged Noncompliance in Post Compliance Inspections.**

   13.1. Within sixty (60) days of conducting the Post Compliance Inspection, Class Counsel will notify CHW in writing if Plaintiffs assert Noncompliance with this Facility Consent Decree.  The written notice shall identify with particularity the basis for any alleged Noncompliance.  If no written Notice of Noncompliance is received by CHW within 90 days after the Post Compliance Inspection is completed, CHW's modifications will be deemed accepted by Class Counsel so that CHW may seek court approval of this Facility in accordance with paragraph 19.1 of the Consent Decree.

   13.2. Within sixty (60) days of receipt of the written notice described in paragraph 13.1, CHW will respond in writing to Class Counsel.  The Parties will then meet and confer over any alleged noncompliance within forty-five (45) days after Class Counsel receives CHW's response.

   13.3. Within thirty (30) days after the meeting described in paragraph 13.2, any remaining unresolved differences as to this Facility will be referred to the Court or, if the Parties so agree, resolved by ADR as set forth in paragraph 20 of the Consent Decree.

   13.4. The Court or a Special Master is entitled to provide appropriate relief upon a showing of Noncompliance as to this Facility Consent Decree.  Relief may include, but is not limited to, enforcement of this Facility Consent Decree, and extension of the Consent Decree for such period as may be necessary to remedy Noncompliance.

13.5. Any Party may petition the Court for relief from the provisions of this Facility Consent Decree upon a showing of supervening obligations or events that are unforeseeable or beyond the control of the Parties, including, but not limited to: changes in state or local building codes or ordinances; other legal or administrative requirements; problems in the financial credit or bond financing markets or the occurrence of natural disasters that may prevent timely compliance with the injunctive relief provisions set forth herein.

14. **Final Hearings Regarding Settlement Corrected Facilities**.

14.1. Once this Facility becomes a Settlement Corrected Facility, and: (1) after any disputes over alleged Noncompliance as to this Settlement Corrected Facility are resolved as described in section 13 above; or (2) sixty (60) days after Class Counsel has waived a Post-Compliance Inspection or (3) ninety (90) days after this Facility's Post Compliance Inspection is deemed accepted because Class Counsel has not provided the written notice described in paragraph 13.1 above, CHW may seek, via motion, a Settlement Corrected Facility Order finding that CHW's obligations with respect to this Settlement Corrected Facility have been fulfilled and that CHW has complied with this Facility Consent Decree.

14.2. Within fifteen (15) days of CHW filing the motion described in paragraph 14.1, Plaintiffs may request an evidentiary hearing on CHW's motion. It is in the Court's discretion to grant or deny the request.

14.3. If the Court finds, as to this Facility, that CHW's obligations have been fulfilled and that CHW has complied with this Facility Consent Decree, the Court will enter a Settlement Corrected Facility Order to that effect with regard to this Facility.

**BINDING EFFECT; NO NOTICE**

15. Once the Court approves this Facility Consent Decree it is a final decree binding the Parties, and a final judgment pursuant to Fed. R. Civ. P. 54, subject to all rights of judicial review provided by law for judgments of this Court.

16. In accordance with Fed. R. Civ. P. 23(b)(2), because the Complaint seeks injunctive relief only, and in keeping with the Court's order dated October 6, 2008, no individual notice to the Class will be required prior to approval of this Facility Consent Decree.

DATED: January 12, 2011          By:   /s/ Edward L. Kemper
                                         EDWARD L. KEMPER
                                         Named Plaintiff

DATED: January 11, 2011          By:   /s/ Connie J. Arnold
                                         CONNIE J. ARNOLD
                                         Named Plaintiff

DATED: September 22, 2010        By:   /s/ Jeff Land
                                         JEFF LAND
                                         Vice-President, Corporate Real Estate
                                         CATHOLIC HEALTHCARE WEST

DATED: January 12, 2011          DE LA O, MARKO, MAGOLNICK & LEYTON

                                 By: Charles D. Ferguson
                                         DANIEL L. LEYTON
                                         CHARLES D. FERGUSON
                                         Attorneys for Named Plaintiffs and the Class

DATED: January 13, 2011          DOWNEY BRAND LLP

                                 By:   /s/ Elizabeth B. Stallard
                                         DANIEL J. MCVEIGH
                                         ELIZABETH B. STALLARD
                                         Attorneys for Defendant
                                         CATHOLIC HEALTHCARE WEST

**IT IS SO ORDERED.**

DATED:  **April 27, 2011.**
                                 _____
                                 LAWRENCE K. KARLTON
                                 SENIOR JUDGE
                                 UNITED STATES DISTRICT COURT